IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

```
UNITED STATES OF AMERICA,       )   CR. NO. 18-00102 HG-01
                                )
          Plaintiff,            )
                                )
     vs.                        )
                                )
DEE JAYE DONNARUMMA, also known )
as DEE JAYE RAGRAGOLA,          )
                                )
          Defendant.            )
                                )
```

**ORDER DENYING DEFENDANT DEE JAYE DONNARUMMA'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A)(i) PURSUANT TO THE FIRST STEP ACT OF 2018 (ECF No. 51)**

Defendant is currently incarcerated at the Federal Correctional Institute Danbury in Connecticut with a projected release date of April 9, 2022.

Defendant has filed a Motion seeking immediate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A). Defendant seeks release due to the COVID-19 pandemic. She claims that her medical conditions place her at high risk of suffering serious complications should she contract the virus.

The Government opposes Defendant's Motion.

The Court elects to decide the matter without a hearing pursuant to District of Hawaii Local Rule 7.1(c).

Considering the totality of the circumstances, the Court finds that Defendant's release is not appropriate. Defendant has not established that her medical conditions and the threat of

1

exposure to COVID-19 constitute an extraordinary and compelling reason to reduce her sentence.

In addition, the sentencing factors set forth in 18 U.S.C. § 3553(a) do not support Defendant's release.  Defendant committed the instant drug offense while she was on supervised release for another federal felony drug trafficking crime.  Defendant has a lengthy and serious criminal history that includes three separate drug-related crimes along with multiple convictions for theft. Defendant has been given numerous chances for rehabilitation on parole and supervised release and has continually failed to change her behavior.

Defendant's repeated involvement in drug trafficking and her past failure to abide by the terms of her parole and supervised release demonstrate that Defendant poses a significant danger to the public and that she should not be immediately released into the community.

Defendant's EMERGENCY MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A)(i) PURSUANT TO THE FIRST STEP ACT OF 2018 (ECF No. 51) is **DENIED.**

## PROCEDURAL HISTORY

I.  **PROCEDURAL HISTORY OF DEFENDANT'S FEDERAL DRUG CONVICTION AND SUPERVISED RELEASE VIOLATIONS IN 10-CR-00459 HG-07**

In 2011, Defendant pled guilty and was sentenced for her

role in an eight-person drug trafficking conspiracy in United States v. Dee Jaye Ragragola, 10-cr-00459 HG-07 (ECF No. 438).

Defendant was convicted of:

(1)  one count of Conspiracy To Possess With Intent To Distribute And Distribution Of 500 Grams Or More Of Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 846, and 841(b)(1)(A);

(2)  two counts of Use Of Communications Facility To Facilitate The Commission Of A Drug Trafficking Conspiracy in violation of 21 U.S.C. § 843(b).

(November 1, 2011 Judgment in 10-cr-00459 HG-07, ECF No. 442).

Defendant was sentenced to 70 months imprisonment for the conspiracy count and 48 months for the use of communications facilities counts, with all terms to be served concurrently. (Id.)

On August 8, 2014, Defendant was released and her term of supervision commenced.  (Request for Course of Action, 10-cr-00459 HG-07, ECF No. 563).

The Probation Office reported that Defendant struggled to maintain steady employment following her release from prison. (Id. at p. 3).

In September 2017, Defendant was terminated from her employment with JTB Hawaii as a bus driver due to failing to submit to a drug test per company policy.  Defendant admitted that she refused to submit to a drug test because she had smoked

3

marijuana.  (Id.)  Defendant was enrolled in the random drug testing program at Care Hawaii, Inc.

Two months later, in November 2017, Defendant submitted a drug test at Care Hawaii which was sent to the laboratory for confirmation since the specimen appeared to be diluted.  On November 27, 2017, the laboratory confirmed that the specimen was "invalid", not consistent with normal human urine.  (Id.)  When confronted with the laboratory result, Defendant admitted to having used apple juice mixed with water for the drug test to cover her marijuana use.  (Id. at p. 4).

Four months later, in March 2018, Defendant began using and selling methamphetamine.  (Id. at p. 5).

Defendant was arrested on April 20, 2018, after selling methamphetamine.  (Id. at pp. 4-5).

On May 30, 2018, the Probation Office filed a Request For Course Of Action Stating Alleged Violations Of Supervised Release.  (Id. at p. 1).

Defendant was alleged to have not complied with the following conditions of supervision:

1. Defendant admitted to smoking marijuana on at least two occasions during the months of September 2017 and November 2017 in violation of the General Conditions and Standard Condition No. 7;

2. On April 19, 2018, Defendant failed to comply with drug testing in violation of Special Condition No. 7;

3. Pursuant to a Criminal Complaint filed in the District

4

       of Hawaii on April 21, 2018, on or about April 20, 2018, Defendant engaged in conduct constituting Distribution of 5 Grams Or More Of Methamphetamine in violation of 21 U.S.C. § 841(b)(1)(B) and the General Conditions; and,

4. On April 23, 2018, Defendant admitted to using methamphetamine on April 20, 2018 in violation of the General Conditions and Standard Condition No. 7.

(Id. at pp. 2-3).

Defendant admitted to violations Nos. 1 through 4 as stated in the Request For Course Of Action filed on May 30, 2018. (Id.)

## II. PROCEDURAL HISTORY OF DEFENDANT'S FEDERAL DRUG CONVICTION IN 18-CR-00102 HG-01 AND CURRENT TERM OF INCARCERATION

Following her arrest for selling methamphetamine while on supervised release, the Government filed an Information on July 24, 2018, charging Defendant with Distribution of Five Grams Or More Of Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).  (United States v. Dee Jaye Donnarumma, also known as Dee Jaye Ragragola, 18-cr-00102 HG-01, ECF No. 18).

On October 19, 2018, Defendant pled guilty, pursuant to a plea agreement, to the one Count in the Information.  (ECF Nos. 32-36).

Defendant's Presentence Investigation Report (ECF No. 42) reflected that at the time of sentencing Defendant was 59 years old, and she was in Criminal History Category IV with a Total Offense Level of 23 and a guideline provision of 120 months

imprisonment.  (Id. at pp. 2, 27).

The Court imposed a sentence of 70 months imprisonment, followed by 8 years of supervised release.  (ECF No. 45).

### III. PROCEDURAL HISTORY OF DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE AND RELATED FILINGS

On April 6, 2020, Defendant, proceeding pro se, filed a Motion for Emergency Compassionate Release.  (ECF No. 47).

On April 20, 2020, the Government filed a Memorandum in Opposition to Defendant's Motion.  (ECF No. 48).

On April 28, 2020, the Court issued a Minute Order denying Defendant's Motion without prejudice due to her failure to either exhaust her administrative remedies or comply with the 30-day lapse requirement before filing her Motion before the Court. (ECF No. 50).

On May 18, 2020, Defendant, again proceeding pro se, filed her Second Emergency Motion for Compassionate Release.  (ECF No. 51).

On May 19, 2020, Defendant filed an Addendum.  (ECF No. 52).

On May 21, 2020, the Court appointed counsel for Defendant to assist her in supplementing her Motion.  (ECF No. 53).

On May 29, 2020, the Court issued a briefing schedule.  (ECF No. 54).

On June 5, 2020, Defendant, with the assistance of counsel,

filed DEFENDANT DEE JAYE DONNARUMMA'S SEALED SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PRO SE EMERGENCY MOTION FOR COMPASSIONATE RELEASE.  (ECF No. 57).

On the same date, Defendant filed a Supplement to her Memorandum.  (ECF No. 58).  Defendant's filing, prepared by counsel, includes voluminous documents that relate to her place of incarceration.  (Exhibits 2-11 attached to ECF No. 58).

On June 9, 2020, Defendant filed a SEALED AMENDED SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PRO SE EMERGENCY MOTION FOR COMPASSIONATE RELEASE.  (ECF No. 59).

Defendant's June 9, 2020 filing, prepared by counsel, includes 48 pages of Defendant's medical records from the Bureau of Prisons.  (Exhibit 12, attached to ECF No. 59).

On June 16, 2020, the Government filed its Opposition.  (ECF No. 60).

On June 19, 2020, Defendant's counsel filed her Reply.  (ECF No. 61).

On June 26, 2020, Defendant's counsel filed a Notice of Newly Published Supplemental Authority.  (ECF No. 62).

On June 29, 2020, Defendant's counsel filed a Notice of Material Change In Fact Relevant to her Motion.  (ECF No. 63).

The Court elects to decide the matter without a hearing pursuant to District of Hawaii Local Rule 7.1(c).

**STANDARD OF REVIEW**

A judgment of conviction that includes a sentence of imprisonment constitutes a final judgment and may not be modified by a district court except in limited circumstances.  Dillon v. United States, 560 U.S. 817, 824-25 (2010).

On December 21, 2018, Congress passed the First Step Act of 2018.  PL 115-391, December 21, 2018, 132 Stat. 5194.  The First Step Act amended 18 U.S.C. § 3582(c), the statute governing the limited circumstances under which the trial court may evaluate a motion for reduction of sentence.

The First Step Act altered the statute in Section 3582(c)(1)(A) to allow a defendant to request the trial court reduce his sentence through a motion for compassionate release, but the statute requires the defendant to first present his request for release to the Bureau of Prisons.  18 U.S.C. § 3582(c)(1)(A).

**ANALYSIS**

18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, provides, in pertinent part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden

>    of the defendant's facility, whichever is earlier, may
>    reduce the term of imprisonment...after considering the
>    factors set forth in section 3553(a) to the extent that
>    they are applicable, if it finds that—
>
>    (i)  extraordinary and compelling reasons warrant
>         such a reduction;
> ...
>         and that such a reduction is consistent with
>         applicable policy statements issued by the
>         Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

### A.  Mandatory Procedural Requirement

The statute allows the Court to consider a defendant's request for compassionate release only after the defendant has first presented his request to the Bureau of Prisons ("BOP"). In order to file a motion for compassionate release directly with the court, defendant must have either:

(1)  "fully exhausted all administrative rights" with the Bureau of Prisons; or,

(2)  filed his motion with the court after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."

18 U.S.C. § 3582(c)(1)(A); United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

The requirement that a defendant first file a request for compassionate release with the BOP or the warden of the defendant's facility is a mandatory rule. United States v. Alam, 960 F.3d 831, 832-34 (6th Cir. 2020). The defendant must either

9

"fully exhaust" his request with the BOP or wait 30 days from the date of filing his request with the warden before the Court may consider a request for compassionate release. See United States v. Haney, ___ F.Supp.3d ___, 2020 WL 1821988, *3 (S.D.N.Y Apr. 13, 2020) (explaining the statute "requires the defendant either to exhaust administrative remedies or simply to wait 30 days after serving his petition on the warden of his facility before filing a motion in court").

The Parties agree that Defendant has now complied with the procedural requirement of 18 U.S.C. § 3582(c)(1)(A) and that the Court may consider her motion for compassionate release.

**B.   Merits Of Defendant's Request For Compassionate Release**

If a defendant has complied with the mandatory procedural requirement set forth in 18 U.S.C. § 3582(c)(1)(A), the District Court may reduce a term of imprisonment, including the grant of compassionate release, upon finding "extraordinary and compelling reasons" consistent with applicable policy statements of the Sentencing Commission.

The Sentencing Commission's policy statement is provided in United States Sentencing Guidelines § 1B1.13:

> [T]he court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the

10

    court determines that—

        (1)(A)    Extraordinary and compelling reasons warrant the reduction; or

           (B)    The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

        (2)    The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

        (3)    The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

Defendant is not 70 years of age and was not sentenced pursuant to 18 U.S.C. § 3559(c). Defendant is only entitled to relief if she demonstrates:

    (1)  extraordinary and compelling reasons warrant a sentence reduction;

    (2)  he is not a danger to the safety of others or the community; and,

    (3)  any requested reduction is consistent with the policy statement.

<u>United States v. Gill</u>, 2020 WL 2084810, *2 (E.D. Cal. Apr. 30, 2020).

    **1.    Extraordinary And Compelling Reasons Are Required To Warrant Sentence Reduction**

The Sentencing Commission's application note for Guideline § 1B1.13 provides the definition of "extraordinary and compelling

reasons."  The Court agrees with the majority of the district courts in the Ninth Circuit that have concluded that Section 1B1.13 and its definition of "extraordinary and compelling reasons" applies to motions for compassionate release even though the sentencing guideline was not separately amended following the passage of the First Step Act.  See Riley v. United States, 2020 WL 1819838, *8 (W.D. Wash. Apr. 10, 2020) (collecting cases); United States v. Shields, 2019 WL 2359231, *4 (N.D. Cal. June 4, 2019).

Sentencing Guideline Section 1B1.13's comment explains that extraordinary and compelling reasons exist when:

(A) **Medical Condition of the Defendant.**–

   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is—

   (I)   suffering from a serious physical or medical condition,

   (II)  suffering from a serious functional or cognitive impairment, or

   (III) experiencing deteriorating physical or mental health because of the aging process,

   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from

> which he or she is not expected to recover.

(B) **Age of the Defendant.**–The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) **Family Circumstances.**–
  (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

  (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

Defendant is 60 years old.  She is suffering from medical conditions that Defendant argues warrant relief.  Defendant bears the burden to demonstrate that extraordinary and compelling reasons exist that warrant her immediate release from incarceration.  United States v. Greenhut, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020).  Defendant has failed to do so.

Defendant's general concerns about potential exposure to COVID-19 at FCI Danbury do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence. United States v. Eberhart,    F.Supp.3d   , 2020 WL 1450745, *2 (N.D. Cal. Mar. 25, 2020); United States v. Carver,    F.Supp.3d

, 2020 WL 1892340, *3 (E.D. Wash. Apr. 8, 2020).

The Centers for Disease Control ("CDC") has identified certain categories of individuals that are at a higher risk for severe illness due to COVID-19, including people with chronic lung disease, serious asthma, serious heart conditions, obesity, chronic kidney disease requiring dialysis, liver disease, diabetes, or individuals who are immunocompromised.  See United States v. Jones, Crim. No. 13-00860 LEK-03, 2020 WL 2331678, *5 (D. Haw. May 11, 2020).

A review of Defendant's medical record demonstrates that she does not have any severe conditions that warrant release. Defendant does not have any prior diagnosis of diabetes, chronic kidney disease requiring dialysis, or liver disease.  (BOP Medical Records attached to Def.'s Supplement as Ex. 12, ECF No. 59-1).  Defendant has a history of two, isolated upper respiratory infections, the most recent of which was in 2018. (Id.)  On May 1, 2020, her physicians ruled out an autoimmune disorder.  (Id. at p. 2).  Defendant's medical records also reflect that she has "No acute cardiopulmonary disease."  (Id. at p. 48).

Defendant's medical records demonstrate that the only category in which she meets any of the CDC criteria is regarding her weight.  Defendant reports that as of May 2020, she had a Body Mass Index of 30.6.  (Def.'s Supplement at p. 4, ECF No.

14

59). She argues that the current CDC guidelines assert that an individual with a Body Mass Index over 30 is at risk for severe illness from COVID-19. (Notice of Newly Published Supplemental Authority at p. 2, ECF No. 62). The Court finds that this factor alone is insufficient to demonstrate extraordinary and compelling conditions exist to support her immediate release.

Defendant's medical records demonstrate that she has a history of gingivitis and mucositis. To manage her conditions, Defendant takes numerous medications provided by the Bureau of Prisons. (Def.'s Supplement at p. 7, ECF No. 59; see BOP Medical Records attached as Ex. 12 to Def.'s Supplement, ECF No. 59-1).

The record establishes that Defendant has received medical treatment for her conditions at FCI Danbury. Defendant is classified as a care level 2 patient by the Bureau of Prisons, which are "stable outpatients who require clinician evaluations monthly to every 6 months....Their medical and mental health conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring." (Gov't Opp. at p. 10, ECF No. 60). Medical conditions that can be managed in prison are not a basis for compassionate release. United States v. Kazanowski, Crim. No. 15-00459 DKW-05, 2020 WL 3578310, *9 (D. Haw. July 1, 2020) (citing U.S.S.G. § 1B1.13 cmt. n.1(A)).

Defendant has not demonstrated that her conditions, or combination thereof, are so severe as to warrant immediate

15

release.  There is no evidence that Defendant's medical conditions are terminal or substantially diminish her ability to provide self-care within the environment of a correctional facility.  U.S.S.G. § 1B1.13 cmt. n.1(A)(i-ii).

### 2. Release Is Not Available If Defendant Poses A Danger To The Safety Of Others And The Community

In order to be eligible for compassionate release, Defendant must establish release is appropriate pursuant to the factors set forth in 18 U.S.C. § 3553(a) and that she is not a danger to the safety of others or the community.  18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13(2).

The Section 3553(a) sentencing factors do not weigh in favor of a reduced sentence.  The Section 3553(a) factors include the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed.  The nature and circumstances of Defendant Donnarumma's offense weigh in favor of her 70-month sentence.

Defendant was sentenced while in Criminal History Category IV based on two prior, serious drug-related convictions.

Defendant's history and characteristics do not favor a reduced sentence.  Defendant has a long history of involvement with the criminal justice system dating back to 1984.  (Presentence Report at p. 8, ECF No. 42).  Defendant has numerous Hawaii State Court convictions for Theft.  (Id. at pp. 8-11).

Defendant was convicted on April 22, 1996, in Hawaii State Court for Promoting Dangerous Drug 2 and Unauthorized Control of a Propelled Vehicle.  (Id. at pp. 9-10).  Defendant was originally sentenced to probation but was resentenced to 10 years imprisonment on February 24, 1997, and her parole was revoked four separate times between 1997 and 2006.  (Id. at p. 10).  Defendant also has numerous other arrests for Burglary, Theft, Assault, and Promoting a Dangerous Drug.  (Id. at pp. 13-14).

Defendant has been given numerous chances for rehabilitation.  In 1996, Defendant was admitted to treatment at Salvation Army Addiction Treatment Services, but she was discharged after she submitted two urine specimens which tested positive for amphetamine.  (Id. at p. 18).

In February 2005, Defendant was admitted to the Salvation Army's intensive outpatient treatment program, but she was discharged for unauthorized absence from the facility and admitted that she had two drug relapses while in treatment.  (Id.)

In September 2005, Defendant was admitted to drug treatment at Hina Mauka but was discharged for using methamphetamine.  (Id.)

Defendant was convicted in a prior drug trafficking conspiracy in federal court in 2011 in United States v. Dee Jaye Ragragola, 10-cr-00459 HG-07.  While Defendant was on bail she

17

was placed in residential substance abuse treatment at Sand Island Treatment Center, but she was discharged from the program for failure to follow the rules. (Presentence Report at p. 18, ECF No. 42). After serving her term of incarceration, Defendant failed to comply with the terms of her supervised release, beginning in 2017. In September 2017, Defendant was terminated from her employment for failing to comply with drug testing. (Request for Course of Action in 10-cr-00459 HG-07, ECF No. 563).

On November 21, 2017, Defendant attempted to manipulate her urinalysis test. (Id. at pp. 3-4). Defendant then admitted that she used drugs a week prior to the drug test and wanted to circumvent the drug testing process. (Id.)

While on supervised release for her last federal drug crime, Defendant began using and selling methamphetamine, which resulted in her current period of incarceration. (Presentence Report in 18-cr-00102 HG-01, at p. 19, ECF No. 42).

Defendant's extensive criminal record, repeated lack of rehabilitation, attempts to manipulate and circumvent drug testing, and her overall poor record of behavior on parole and on supervised release demonstrate that she poses a danger to the safety of others and the community.

The length of sentence remaining is an additional factor for the Court to consider in evaluating compassionate release. United States v. Connell,     F.Supp.3d.    , 2020 WL 2315858, at

18

\*6 (N.D. Cal. May 8, 2020).  At the time of her February 14, 2019 sentence, Defendant was in Criminal History category IV with a recommended guideline sentence of 120 months imprisonment.  Defendant received a significant downward departure of a sentence of 70 months imprisonment.

When Defendant applied for compassionate release in May 2020, she had only served approximately 25 months of her 70-month sentence.  Such a short sentence would not properly reflect the seriousness of her offense or adequately deter similar criminal conduct by the Defendant or others.  Defendant's immediate release is not appropriate considering the totality of the circumstances.

## CONCLUSION

Defendant's Emergency Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)(i) Pursuant To The First Step Act Of 2019 (ECF No. 51) is **DENIED.**

IT IS SO ORDERED.

Dated: July 21, 2020, Honolulu, Hawaii.

Helen Gillmor
United States District Judge

United States v. Dee Jaye Donnarumma, aka Dee Jaye Ragragola, Crim. No. 18-00102 HG-01; **ORDER DENYING DEFENDANT DEE JAYE DONNARUMMA'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A)(i) PURSUANT TO THE FIRST STEP ACT OF 2018 (ECF No. 51)**

19